UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL CLAY,<br><br>         Plaintiff,<br><br>    -v.-<br><br>WILLIAM A. LEE, Superintendent of Green Haven C.F.; L. FRANCO, Deputy Superintendent of Programs; SERGEANT WAHLQUIST, STP/SHU Sergeant; C. TALIAFERRO, Mental Health Unit Chief; L. BACINO, STP Coordinator,<br><br>         Defendants. | 13-CV-7662 (KMK)<br><br>OPINION & ORDER |

Appearances:

Daniel Clay
Ossining, NY
*Pro Se Plaintiff*

Julinda Dawkins, Esq.
New York State Office of the Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

  Pro se Plaintiff Daniel Clay ("Plaintiff") currently incarcerated at Sing Sing Correctional Facility, brings this Action under 42 U.S.C. § 1983 against Superintendent of Green Haven Correctional Facility ("Green Haven") William A. Lee ("Lee"), Deputy Superintendent of Programs L. Franco ("Franco"), Special Treatment Program ("STP")/Special Housing Unit ("SHU") Sergeant Wahlquist ("Wahlquist"), Mental Health Unit Chief C. Taliaferro ("Taliaferro"), and STP Coordinator L. Bacino ("Bacino," and together with Lee, Franco, and Taliaferro, "Defendants"). Plaintiff alleges that the conditions of his confinement at Green Haven during the summer of 2010 violated his constitutional rights under the First, Sixth, Eighth,

and Fourteenth Amendments.  (*See* Second Am. Compl. 3 (Dkt. No. 50)).)  Specifically, Plaintiff alleges that he suffered "inhumane conditions" of a cockroach infestation, extreme heat that "hindered [his] ability to litigate" pending legal matters, and thirst due to fear of "drink[ing] the brown water that came out of the sink."  (*Id.* at 3, 4.)  Before the Court is a Motion To Dismiss filed by Defendants Lee, Franco, Taliaferro, and Bacino.  (*See* Mot. To Dismiss (Dkt. No. 57).)[1]  For the following reasons, Defendants' Motion is granted.

## I.  Background

### A.  Factual Background

Plaintiff was transferred to Green Haven on June 7, 2010, where he was placed in the SHU in a therapeutic program for inmates who receive mental health services.  (Second Am. Compl. 2).  Plaintiff alleges that a few days after his arrival, he found giant cockroaches crawling in his cell.  (*Id.*)  Plaintiff also asserts that during his 66 days in the STP at Green Haven, he suffered from "intense heat" as a result of 100 degree temperatures.  (*Id*. at 3.)  Plaintiff alleges that "[t]he heat was so intense that on certain days [D]efendants []Taliaferro and []Bacino did not bring [inmates] out of [their] cells for programs," (*id.*), and that Defendants cancelled the programs because Defendants did not themselves want to suffer under the intense heat, (*id.*).  Plaintiff avers that Defendants either knew or should have known about the conditions and did nothing to remedy them.  (*Id.*)  Plaintiff asserts that he suffered from thirst due to the extreme temperatures, but "was afraid to drink the brown water that came out of the sink."  (*Id.* at 4.)

---

[1] At the time Defendants filed their Motion To Dismiss, Defendant Wahlquist had not yet been served.  (*See generally* Dkt.)  Plaintiff submitted a letter dated July 13, 2016 asking the Court for additional time to serve Defendant Wahlquist.  (*See* Dkt. No. 59.)  Pursuant to the Court's September 12, 2016 Order of Service, the Clerk of Court issued a summons as to Defendant Wahlquist on September 13, 2016.  (*See* Dkt. (minute entry for Sept. 13, 2016).)  Defendant Wahlquist was served on November 24, 2016, (*see* Dkt. No. 67), and has not answered.

Plaintiff further alleges that at the time of his stay in the STP, Plaintiff had a lawsuit pending in federal court and a visitation petition pending in Brooklyn Family Court. (*Id.* at 3.) As a result of the conditions in the STP and Defendants' alleged unwillingness to let the inmates out of their cells, Plaintiff asserts he was unable to litigate these pending matters. (*Id.*)

Plaintiff seeks $10,000 in compensatory damages, $10,000 in punitive damages, and $500 in nominal damages as compensation for the "terror . . . [p]ain and mental anguish" that resulted from the conditions he endured while housed in the STP at Green Haven. (*Id.* at 4, 6.)

B.  Procedural Background

On October 23, 2013, Plaintiff filed his original Complaint against Commissioner of the Department of Corrections Brian Fischer, Defendant Lee, and John and Jane Doe Commissioners of the Department of Mental Health. (Dkt. No. 2.) In a December 17, 2013 Order To Amend, then-Chief Judge Loretta A. Preska of the Southern District of New York dismissed Plaintiff's Complaint for failure to state a claim and granted Plaintiff leave to amend his Complaint to correct the deficiencies identified in the Order. (Dkt. No. 6.)[2] Plaintiff failed to amend in the time allotted and Judge Preska dismissed Plaintiff's Complaint on July 14, 2014. (Dkt. No. 14.)

Plaintiff filed two letters on August 6 and 15, 2014, requesting additional time to file an Amended Complaint. (Dkt. Nos. 16, 17.) In a February 4, 2015 Order, Judge Preska liberally construed Plaintiff's letters as motions to alter or amend judgment under Federal Rule of Civil Procedure 59(e) and motions for reconsideration under Local Civil Rule 6.3, and granted Plaintiff's motion for reconsideration. (Dkt. No. 18.)

---

[2] Plaintiff's case was initially assigned to then-Chief Judge Preska. On March 18, 2015, Plaintiff's case was reassigned to this Court. (*See* Dkt. (minute entry for Mar. 18, 2015).)

On March 11, 2015, Plaintiff filed an Amended Complaint naming Defendants Lee, Franco, Taliaferro, Bianco, and a John Doe STP/SHU Sergeant.  (Dkt. No. 20.)  The Court issued an Order of Service pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997), dated March 27, 2015, directing the New York State Attorney General (the "Attorney General") to ascertain the identity and address of the John Doe defendant.  (Dkt. No. 22.)[3]  The Order of Service provided that Plaintiff was to file an amended complaint naming the John Doe defendant within 60 days of receiving information about the defendant from the Attorney General.  (*Id.* at 2–3.)  In response, the Attorney General notified the Court and Plaintiff by letter dated May 27, 2015 that "Sergeant Wahlquist was the Sergeant who had the bid for the post of Sergeant assigned to the Special Treatment Program of the Special Housing Unit at Green Haven."  (Dkt. No. 23.)  Plaintiff then filed the Second Amended Complaint on February 29, 2016, substituting "Sergeant Wahlquist, STP/SHU Sergeant" for "John Doe STP/SHU Sergeant."  (Second Am. Compl. 1.)

On June 20, 2016, Defendants filed the instant Motion To Dismiss and accompanying memorandum of law.  (Mem. of Law in Supp. of Defs.' Mot. To Dismiss ("Defs.' Mem.") (Dkt. No. 58).)  Plaintiff did not file a response.

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

---

[3] In *Valentin v. Dinkins*, the Second Circuit held that a pro se litigant is entitled to assistance from the district court in identifying a defendant.  121 F.3d 72, 75 (2d Cir. 1997).

4

elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and internal quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145

(2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."  *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

Because Plaintiff is proceeding pro se, the Court must construe his pleadings liberally and "interpret them to raise the strongest arguments that they suggest."  *Maisonet v. Metro. Hosp. & Health Hosp. Corp.*, 640 F. Supp. 2d 345, 347 (S.D.N.Y. 2009) (internal quotation marks omitted); *see also Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (same).  This admonition "applies with particular force when a plaintiff's civil rights are at issue."  *Maisonet*, 640 F. Supp. 2d at 348; *see also McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004) (same).  However, the liberal treatment afforded to pro se litigants does not excuse a pro se party "from compliance with relevant rules of procedural and substantive law."  *Maisonet*, 640 F. Supp. 2d at 348 (internal quotation marks omitted).

B.  Analysis

1.  Eighth Amendment

Plaintiff alleges that Defendants "knew of or should have known" about the conditions in the STP at Green Haven and that "[t]he deliberate and callous indifference of [D]efendants violated [P]lainti[ff]'s Eighth Amendment constitutional right to be free from cruel and unusual punishment."  (Second Am. Compl. 3).  While conditions of confinement may not "involve the wanton and unnecessary infliction of pain," *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981), "the Constitution does not require comfortable prison conditions," *Walker v. Schult*, 717 F.3d 119,

6

125 (2d Cir. 2013) (internal quotation marks omitted); *see also Seymore v. Dep't of Corr. Servs.*, No. 11-CV-2254, 2014 WL 641428, at *3 (S.D.N.Y. Feb. 18, 2014) ("[T]he Second Circuit . . . has explained that 'because society does not expect or intend prison conditions to be comfortable, only extreme deprivations are sufficient to sustain a conditions-of-confinement claim'" (alteration and some internal quotation marks omitted) (quoting *Blyden v. Mancusi*, 186 F.3d 252, 263 (2d Cir. 1999))). Therefore, to establish that conditions of confinement violate the Eighth Amendment, an inmate must show that: "(1) objectively, the deprivation the inmate suffered was sufficiently serious that he was denied the minimal civilized measure of life's necessities, and (2) subjectively, the defendant official acted with a sufficiently culpable state of mind . . . , such as deliberate indifference to inmate health or safety." *Walker*, 717 F.3d at 125 (alteration in original) (internal quotation marks omitted); *see also Wilson v. Seiter*, 501 U.S. 294, 297–98, 302 (1991) (same).

"To meet the objective element [of the test], the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker*, 717 F.3d at 125. "To meet the subjective element, [a] plaintiff must show that the defendant acted with more than mere negligence," and instead that the defendant knew of and disregarded "an excessive risk to inmate health or safety." *Id.* (internal quotation marks omitted).

With regard to the objective element of Plaintiff's conditions-of-confinement claim, Plaintiff's complaints include the presence of cockroaches in the cells of the STP at Green Haven. (*See* Second Am. Compl. 2.) However, "[t]he mere presence of vermin in a detainee's housing area does not constitute a denial of 'the minimal civilized measure of life's necessities.'" *Benjamin v. Fraser*, 161 F. Supp. 2d 151, 174 (S.D.N.Y. 2001) (quoting *Rhodes*, 452 U.S. at

7


347), *aff'd in part, vacated in part*, 343 F.3d 35, 57 (2d Cir. 2003), *overruled on other grounds by Caiozzo v. Koreman*, 581 F.3d 63 (2d Cir. 2009)); *Brody v. Koehler*, No. 87-CV-1093, 1988 WL 78371, at *2 (S.D.N.Y. July 15, 1988) (holding the presence of cockroaches, among other conditions, "are not of constitutional dimension" (internal quotation marks omitted)); *see also Wang v. Vahldieck*, No. 09-CV-3783, 2012 WL 119591 at *9 (E.D.N.Y. Jan. 9, 2012) ("[The] plaintiff alleges that she was detained for a maximum of six and a half hours in a dirty cell containing urine, cockroaches and used bathroom tissue . . . . Such temporary exposure, though perhaps quite unpleasant for [the plaintiff], does not rise to the sort of conduct held 'repugnant to the conscience of mankind.'"); *Govan v. Campbell*, 289 F. Supp. 2d 289, 296–97 (N.D.N.Y. 2003) (finding allegations that the prison had "cockroach problems" were insufficient to state an Eighth Amendment claim); *Oliver v. Powell*, 250 F. Supp. 2d 593, 605 (E.D. Va. 2002) (granting summary judgment because allegations of a cell with cockroaches, leaky toilets, and peeling paint did "not rise to the level of an Eighth Amendment claim").  Moreover, Plaintiff does not describe how the presence of cockroaches in his cell presented a danger to his well-being sufficient to satisfy the Eighth Amendment inquiry.  *See Govan*, 289 F. Supp. 2d at 296–97 (dismissing Eighth Amendment claim because the plaintiff failed to assert how he was actually harmed by the presence of cockroaches).  As Plaintiff has failed to meet the first prong of the test, he has not established that such conditions render his confinement constitutionally infirm.

   Plaintiff also alleges that "the heat in the cell was unbearable" and that "[d]uring the summer of 2010, the temperature reached 100 [degrees]."  (Second Am. Compl. 3.)  Various courts, including the Second Circuit, have held that excessively hot or cold temperatures may qualify as a constitutional violation.  *See, e.g.*, *Gaston v. Coughlin*, 249 F.3d 156, 165 (2d Cir. 2001) (finding exposure to freezing temperatures for a period of five months can constitute a

violation of the Eighth Amendment); *Corselli v. Coughlin*, 842 F.2d 23, 27 (2d Cir. 1988) (noting exposure to "bitter cold" and subfreezing temperatures for three months may constitute cruel and unusual punishment); *Sleeper v. City of Richmond*, No. 12-CV-441, 2012 WL 3555412, at *7 (E.D. Va. Aug. 16, 2012) (finding excessive heat, which caused the death of the prisoner, could amount to an Eighth Amendment violation); *Clark v. Bandy*, No. 10-CV-169, 2011 WL 1346975, at *3 (N.D. Ga. Apr. 8, 2011) (holding prisoner could state an Eighth Amendment claim where he complained to prison officials of excessive heat and trouble breathing for three months).

However, district courts in the Second Circuit have found allegations of exposure to extreme temperatures for short periods of time insufficient to state an Eighth Amendment claim. *See, e.g.*, *Stevens v. City of New York*, No. 10-CV-5455, 2011 WL 3251501, at *3–4, n.2 (S.D.N.Y. July 22, 2011) (holding pretrial detainee housed in a cell with a broken window covered by a garbage bag during cold and rainy weather for as many as four days did not allege a constitutional violation); *Borges v. McGinnis*, No. 03-CV-6375, 2007 WL 1232227, at *6 (W.D.N.Y. Apr. 26, 2007) (finding inmate, wearing a paper gown and slippers, with no blanket, residing in a cell that was approximately 50 degrees for three days did not suffer a constitutional deprivation); *Scot v. Merola*, 555 F. Supp. 230, 231-234 (S.D.N.Y. 1983) (granting the motion to dismiss inmate's Eighth Amendment claim based on his incarceration for three-and-a-half months in housing area without heat where windows were broken, and temperature dropped below fifty degrees). The teaching of these cases is that to be actionable as a constitutional foul, a "claim based on exposure must be premised on a threat to health and safety that existed for a prolonged period." *Stevens*, 2011 WL 3251501, at *3 (citing *Trammell v. Keane*, 338 F.3d 155, 165 (2d Cir. 2003)).

Here, it is unclear whether "100 [degrees]" is indicative of the temperature outdoors or the temperature inside Plaintiff's cell. (Second Am. Compl. 3.) Additionally, Plaintiff's Complaint does not state whether the temperatures complained of lasted for the entirety of Plaintiff's stay in the STP. Indeed, Plaintiff states that "[t]he heat was so intense that *on certain days*" inmates were not let out of their cells for programs. (*Id.* (emphasis added).) Nor does Plaintiff plausibly explain how he knew the temperature was actually 100 degrees, or if he means to say that it was very hot on some days.

Importantly, Plaintiff has failed to demonstrate how the heat "pose[d] an unreasonable risk of serious damage to [Plaintiff's] health." *Walker*, 717 F.3d at 125. Plaintiff alleges that he "suffered from thirst because [he] was afraid to drink the brown water that came out of the sink," (Second Am. Compl. 4), but fails to plead a physical injury that resulted from his exposure to the alleged extreme temperature. Plaintiff pleads no "serious damage to his health," let alone an "unreasonable risk" of such damage in the future. *Walker*, 717 F.3d at 125. Accordingly, the conditions of which Plaintiff complains are not the kind of objectively serious deprivations that rise to the level of a constitutional violation.

Plaintiff also contends that "[he] was afraid to drink the brown water that came out of the sink," (Second Am. Compl. 4), and that "[he] told [Defendants] about the . . . brown water, but they did nothing," (*id.* at 2). The Supreme Court has held the Eighth Amendment could require a remedy to a complaint about "demonstrably unsafe drinking water," despite the fact that the harm from drinking it might be a future one. *Helling v. McKinney*, 509 U.S. 25, 33 (1993). However, here, Plaintiff does not plead sufficient facts for the Court to conclude the existence of a constitutional violation. Plaintiff does not indicate whether the water was brown for his entire stay in the STP at Green Haven or whether it was an infrequent occurrence. *See Cano v. City of*

10

*New York*, 119 F. Supp. 3d 65, 80 (E.D.N.Y. 2015) ("[N]othing in the record . . . suggest[s] that a single [p]laintiff was *regularly* deprived . . . [of clean] water"), *appeal filed*, No. 15-CV-2870 (Sept. 11, 2015); *Cruz v. Jackson*, No. 94-CV-2600, 1997 WL 45348, at *7 (S.D.N.Y. Feb. 5, 1997) ("Because contaminated water may pose serious health problems, an allegation that prison officials *persistently* provided only rusty drinking water would satisfy the objective component of an Eighth Amendment claim." (emphasis added)).  Absent allegations suggesting that Plaintiff was consistently deprived of potable drinking water, Plaintiff's claims do not constitute a violation of the Eighth Amendment.  *See Cruz*, 1997 WL 45348, at *7 ("An isolated serving of rusty water would not give rise to an Eighth Amendment claim.").

      More importantly, Plaintiff does not allege that the condition of the water posed an unreasonable risk of serious damage to his health.  *See Walker*, 717 F.3d at 125.  For example, Plaintiff does not assert that he suffered dehydration or any serious health condition as a result of his thirst.  Nor does Plaintiff allege that he was deprived of other sources of water or refreshments.  Without more to support his allegations, Plaintiff's claims cannot amount to a deprivation of his rights sufficient to satisfy the objective prong of the test.  *Cano*, 119 F. Supp. 3d at 79–80 (finding the plaintiffs failed to demonstrate that the water "posed an immediate danger to their health and well-being").

      Even assuming that Plaintiff has alleged one or more objectively serious deprivations—which he has not—he fails to sufficiently plead deliberate indifference to support an Eighth Amendment claim.  *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (noting a plaintiff must allege an official knowingly disregarded an excessive risk to inmate health or safety to state an Eighth Amendment claim for inhumane conditions of confinement).  To survive a motion to dismiss, Plaintiff must allege that prison officials acted with "a mental state equivalent to

subjective recklessness, as the term is used in criminal law." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006).  Here, Plaintiff specifically names several individuals in connection with certain of his claims, but fails to identify an individual who is responsible for the conditions of which he complains.  For example, Plaintiff asserts that "STP/SHU Sergeant Wahlquist and the STP Coordinator L. Bacino walk through the STP everyday" and that "Mental Health Unit Chief C. Taliaferro knew about the conditions . . . because she walks through the STP about 2–3 times per week."  (Second Am. Compl. 2.)  Plaintiff states that "[p]risoners would kill the giant cockroaches and throw them on the walkway, so that there would be no way that the [D]efendants could not see them."  (*Id.*)  Plaintiff further alleges that "[t]he heat was so intense that on certain days[,] [D]efendants C. Taliaferro and L. Bacino did not bring [the inmates] out of [their] cells for programs."  (*Id.* at 3.)  Finally, Plaintiff asserts that Defendants Lee and Franco "knew about these conditions because of the grievance [Plaintiff] filed," (*id.*), and that "Defendant Franco was obligated to find out why prisoners were not let out for programs and to remedy the situation, [and] he did neither," (*id.*).

While Plaintiff claims that his filing of a grievance and the STP walk-throughs necessarily gave Defendants knowledge of the conditions to which they were indifferent, this alone does not equate to deliberate indifference.[4]  Plaintiff does not allege that any Defendant "knew of a *substantial risk to inmate health or safety*."  *Farmer*, 511 U.S. at 844 (emphasis

---

[4] The fact that Plaintiff filed a grievance with the prison is inadequate to support a finding of deliberate indifference under the Eighth Amendment.  *See Rivera v. Bloomberg*, No. 11-CV-629, 2012 WL 3655830, at *6 (S.D.N.Y. Aug. 27, 2012) (finding that the plaintiffs' allegation that they informed the commissioner of their claims involving contaminated water was nonetheless insufficient to plead deliberate indifference, and that "[e]ven if the [c]omplaints could be read to suggest that [the commissioner] failed to act, a prisoner's allegation that a supervisory official failed to respond to a grievance is insufficient to establish that the official exhibited deliberate indifference by failing to act on information indicating that the violation was occurring" (alterations and internal quotation marks omitted)).

added); *see Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) ("An official acts with the requisite deliberate indifference when that official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." (internal quotation marks omitted).) As noted above, Plaintiff does not allege that the conditions complained of exposed him to health or safety risks. Merely stating that Defendants "knew or should have known" of the conditions is insufficient to demonstrate deliberate indifference. *See Seymore*, 2014 WL 641428, at *4. As Plaintiff has failed to meet both the objective and subjective elements of the test, Plaintiff's Eighth Amendment claim is dismissed.

      2. Denial of Access to the Courts

In addition to his Eighth Amendment claim, Plaintiff alleges that "[t]he intense heat hindered [his] ability to litigate" pending legal matters, (Second Am. Compl. 3), and resulted in a violation of Plaintiff's rights under the "First, Sixth[,] and Fourteenth Constitutional Amen[d]ments that gu[a]rantee the Plaintiff's [a]ccess to the [c]ourts," (*id.*).

As an initial matter, Plaintiff cannot make out a Sixth Amendment claim because his Sixth Amendment rights are not implicated by the facts alleged. The Sixth Amendment guarantees the right to counsel in "*all criminal prosecutions*." U.S. Const. amend. VI (emphasis added); *see also United States v. Mills*, 412 F.3d 325, 328 (2d Cir. 2005) (the Sixth Amendment guarantees that "'[i]n all *criminal prosecutions*, the accused shall enjoy the right to have the Assistance of Counsel for his defen[s]e.'" (emphasis added) (alterations omitted) (quoting U.S. Const. amend. VI)). Here, Plaintiff's pleading offers no indication of a request by Plaintiff to speak with an attorney, or Plaintiff was involved in any criminal proceedings. As "the Sixth

Amendment does not govern civil cases," *Turner v. Rogers*, 564 U.S. 431, 441 (2011), Plaintiff's Sixth Amendment claim must be dismissed.

Regarding the First Amendment claim, it is axiomatic that "[p]risoners . . . have a constitutional right of access to the courts." *Bourdon v. Loughren*, 386 F.3d 88, 92 (2d Cir. 2004). This means that prisons must "give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bounds v. Smith*, 430 U.S. 817, 825 (1977). However, impairment of an inmate's "litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Pollack v. Holanchock*, No. 10-CV-2402, 2012 WL 1646893, at *2 (S.D.N.Y. May 10, 2012) (internal quotation marks omitted). Thus, for example, "[m]ere delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation." *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (internal quotation marks omitted); *see also Smith v. City of New York*, No. 14-CV-443, 2015 WL 1433321, at *3 (S.D.N.Y. Mar. 30, 2015) (same).

"To establish a constitutional violation based on denial of access to the courts, a plaintiff must show that the defendant's conduct was deliberate and malicious, and that the defendant's actions resulted in an *actual injury* to the plaintiff." *Bellezza v. Holland*, 730 F. Supp. 2d 311, 314 (S.D.N.Y. 2010) (emphasis added) (internal quotation marks omitted); *see also Davis*, 320 F.3d at 351 ("[A] plaintiff must allege that the defendant took or was responsible for actions that hindered a plaintiff's efforts to pursue a legal claim." (alterations and internal quotation marks omitted)); *see also Monsky v. Moraghan*, 127 F.3d 243, 247 (2d Cir. 1997) ("In order to establish a violation of a right of access to courts, a plaintiff must demonstrate that a defendant caused

14

actual injury, i.e., took or was responsible for actions that hindered a plaintiff's efforts to pursue a legal claim." (alterations and internal quotation marks omitted)).

To successfully plead an access-to-courts claim, a plaintiff must demonstrate an actual injury—"that a nonfrivolous legal claim had been frustrated or was being impeded due to the actions of prison officials." *Williams v. Superintendent of Brooklyn Det. Ctr.*, No. 15-CV-6085, 2015 WL 7281646, at *2 (E.D.N.Y. Nov. 17, 2015) (internal quotation marks omitted); *see also Quezada v. Roy*, No. 14-CV-4056, 2015 WL 5970355, at *12 (S.D.N.Y. Oct. 13, 2015) (finding plaintiff must "demonstrate that the defendant's conduct frustrated the plaintiff's efforts to pursue a nonfrivolous claim" (internal quotation marks omitted); *Groenow v. Williams*, No. 13-CV-3961, 2014 WL 941276, at *7 (S.D.N.Y. Mar. 11, 2014) ("[A] plaintiff must show that deprivation of his right to access the courts unfairly prejudiced his case." (citing *Lewis v. Casey*, 518 U.S. 343, 353 (1996))).  For example, a plaintiff could show that he "has been unable to file a complaint or has had a complaint dismissed for failure to observe a technicality" as a result of the actions of the defendant.  *Benjamin v. Fraser*, 264 F.3d 175, 184 (2d Cir. 2001).

In the case at hand, Plaintiff's access-to-the-courts claim suffers from the deficiency that he alleges no injury.  For example, Plaintiff does not allege that he was denied access to the law library during the time programing was suspended due to the heat.  Even so, facilities "may place reasonable restrictions on inmates' use of facility law libraries as long as those restrictions do not interfere with inmates' access to the courts." *Melendez v. Haase*, No. 04-CV-73, 2010 WL 5248627, at *7 (S.D.N.Y. Dec. 15, 2010) (internal quotation marks).  Nor does Plaintiff allege that he was unable to meet a deadline or communicate with court personnel as a result of Defendants' actions, nor does he allude to undesirable outcomes of the identified proceedings. (*See* Am. Compl. 3).  Indeed, Plaintiff does not even allege that his pending lawsuits were

nonfrivolous. (*See id.*) As a result, the Court can find no indication that Plaintiff was prejudiced or his efforts frustrated, let alone at the hands of Defendant. Accordingly, Plaintiff's access-to-the-courts claim is dismissed.

### 3. Qualified Immunity

Defendants also contend that Plaintiff's claims should be dismissed on qualified immunity grounds. (*See* Defs.' Mem. 14–16.) The doctrine of qualified immunity generally shields "government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). This protection attaches "only if (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Coggins v. Buonora*, 776 F.3d 108, 114 (2d Cir. 2015) (internal quotation marks omitted). In this context, a court "is guided by two questions: first, whether the facts show that the defendants' conduct violated [the] plaintiffs' constitutional rights, and second, whether the right was clearly established at the time of the defendants' actions." *Golodner v. Berliner*, 770 F.3d 196, 201 (2d Cir. 2014) (alterations and internal quotation marks omitted). Here, the second prong of the inquiry need not be reached because, as discussed above, Plaintiff has not plausibly pled that Defendants violated his constitutional rights. *See Posr v. City of New York*, No. 10-CV-2551, 2013 WL 2419142, at *10 n.8 (S.D.N.Y. June 4, 2013) ("Because [the defendant] did not violate [the] [p]laintiff's Fourth Amendment rights, there is no need to consider if [the defendant] is entitled to qualified immunity."), *aff'd sub nom. Posr v. Ueberbacher*, 569 F. App'x 32 (2d Cir. 2014).

### 4. Section 1997e(e) of the PLRA

Defendants argue that Plaintiff's Second Amended Complaint should be dismissed because it is premised on emotional and mental injuries, rather than a physical injury, as required under § 1997e(e) of the Prison Litigation Reform Act ("PLRA"). (*See* Defs.' Mem. 16–17.) Section 1997e(e) of the PLRA states: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Although "[b]y its terms, [§ 1997e(e)] does not limit the prisoner's right to request injunctive or declaratory relief," *Thompson v. Carter*, 284 F.3d 411, 418 (2d Cir. 2002), the Second Circuit has held that "[§] 1997e(e) applies to claims in which a plaintiff alleges constitutional violations so that the plaintiff cannot recover damages for mental or emotional injury for a constitutional violation in the absence of a showing of actual physical injury." *Id.* at 417.

The Court thus agrees with Defendants. In the absence of alleging physical injury, Plaintiff cannot recover the compensatory, punitive, and nominal damages he seeks. (*See* Second Am. Compl. 6.) In his Second Amended Complaint, in the section titled, "Injuries," Plaintiff lists "[t]error from the giant cockroaches," "[p]ain and mental anguish," and "thirst." (*Id.* at 4.)

In *Dillon v. City of New York*, the plaintiff alleged that "toxic" brown shower water at Rikers Island caused "bumps on [his] private parts" and "[p]ain and suffering." No. 12-CV-7775, 2014 WL 658095, at *2 (S.D.N.Y. Feb. 19, 2014) (alterations in original). The court rejected the defendants' argument that the plaintiff's claim did not meet the pleading requirements, but found that the plaintiff's claim failed to meet the physical injury condition under § 1997e(e). *Id.* The plaintiff's injury—though physical—was de minimis, *see Cole v.*

17

*Artuz*, No. 97-CV-0977, 2000 WL 760749 at *4 n.2 (S.D.N.Y. June 12, 2000) (noting that while an injury need not be significant, it "must be more than de minimis"), and accordingly, the court dismissed the complaint, *Dillon*, 2014 WL 658095, at *3.

Unlike the plaintiff in *Dillon*, here, Plaintiff fails to assert that he suffered *any* physical effects as the result of the water in the STP at Green Haven. The same is true for Plaintiff's claims regarding the cockroaches and heat. Accordingly, because Plaintiff's Second Amended Complaint fails to allege a physical injury, the Court dismisses his claims.

### III. Conclusion

In light of the foregoing analysis, the Court grants Defendants' Motion.

The Court notes that Plaintiff has already amended his Complaint twice, and did so once in response to Judge Preska's decision on the merits of his claims. (*See* Order To Amend (Dkt. No. 18).) However, in light of the fact that Plaintiff is proceeding pro se, and because Judge Preska's Order did not dismiss Plaintiff's Complaint on the same grounds detailed in this Opinion, the Second Amended Complaint is dismissed without prejudice. Plaintiff has 30 days from the date of this Opinion to file a Third Amended Complaint. Failure to honor this deadline could result in dismissal of this Action with prejudice.

The Clerk of Court is respectfully requested to terminate the pending Motion. (Dkt. No. 57.)

SO ORDERED.

DATED: January 27, 2017
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE