UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DANIEL CLAY,

Plaintiff,

v.

WILLIAM A. LEE, *et al.*,

Defendants.

No. 13-CV-7662 (KMK)

OPINION & ORDER

<u>Appearances</u>:

Daniel Clay
Dannemora, NY
*Pro Se Plaintiff*

Julinda Dawkins, Esq.
New York State Office of the Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

Daniel Clay ("Plaintiff"), currently incarcerated at Clinton Correctional Facility, brings

this pro se Action, pursuant to 42 U.S.C. § 1983, against Superintendent William A. Lee ("Lee"),

Deputy Superintendent of Programs L. Franco ("Franco"), Special Treatment Program ("STP")

Sergeant Wahlquist ("Wahlquist"), Mental Health Unit Chief C. Taliaferro ("Taliaferro"), STP

Coordinator L. Bacino ("Bacino"), Sergeant Cousin ("Cousin"), and Sergeant Suprenant

("Suprenant") (collectively, "Defendants"), all employees of Green Haven Correctional Facility

("Green Haven"). Plaintiff alleges that the conditions of his confinement at Green Haven during

the summer of 2010 violated his constitutional rights under the Eighth and Fourteenth

Amendments, as well as his rights under the Americans with Disabilities Act ("ADA"), 42

U.S.C. § 12112, and the Rehabilitation Act, 29 U.S.C. § 794. (*See* Third Am. Compl. ("TAC")

(Dkt. No. 99).) Specifically, Plaintiff alleges that, for the 67 days he was in the Green Haven

STP, he "was subjected to excessive heat, deprivation of clean water[,] and [a] cockroach infestation." (TAC ¶ 2.) Before the Court are Defendants' Motions To Dismiss. (*See* Dkt. Nos. 117, 151.) For the following reasons, the Motions are granted. Plaintiff's Third Amended Complaint is dismissed with prejudice.

## I.  Background

### A.  Factual Background

Plaintiff was transferred to Green Haven on June 7, 2010, where he was placed in the STP, a "therapeutic program for inmates who receive mental health services." (TAC ¶ 1.) Plaintiff asserts that he was in the STP for a total of 67 days, between June 7 and August 13, 2010. (*Id.* ¶¶ 1–2.) During that period, Plaintiff first alleges that "there was a heatwave where the temperature reached 102 degrees," that "there was no ventilation," and that "[i]t was like being locked in a car on a hot [s]ummer day." (*Id.* ¶¶ 3–5.) As a result, Plaintiff "sweat profusely day and night." (*Id.* ¶ 6.) Plaintiff further alleges that, throughout his time in the STP, there was "brown, contaminated water coming out of the sink," causing Plaintiff to be unable to "replace the body fluids he lost through sweating" and to "suffer from dehydration." (*Id.* ¶¶ 6, 10, 15–16.) Because Plaintiff was on a "Cold Alternative Diet," he would only "receive water or refreshments" during "breakfast, lunch[,] and dinner." (*Id.* ¶ 7.) At breakfast, he would receive a 4-ounce cup of juice as well as an 8-ounce cup of hot water with which to make coffee; at lunch, he would receive another 8-ounce cup of hot water; and at dinner he would receive two 8-ounce cups of hot water. (*Id.* ¶¶ 8–9.) However, Plaintiff alleges that he "never had a *cold* cup of water to relieve his suffering from the intense heat." (*Id.* ¶ 10 (emphasis in original).) According to Plaintiff, the combination of heat, sweating, and deprivation of water caused him "pain, dehydration, thirst, and put [him] at risk for a heat stroke." (*Id.* ¶ 11.) Plaintiff also

alleges that there were "giant" cockroaches in the STP which, given his "*extreme* disgust for cockroaches" and "history of mental health issues," "terrorized" Plaintiff. (*Id.* ¶¶ 18–19 (emphasis in original).)

Finally, Plaintiff alleges that "[D]efendants knew about these conditions" — the excessive heat, the brown sink water, and the cockroaches — "but did nothing about them." (*Id.* ¶ 13.) In particular, Plaintiff alleges that he "told the [D]efendants about th[e] conditions when they made rounds in the STP" and, with respect to the cockroaches, that Defendants "could see the[ir] corpses." (*Id.* ¶¶ 13–14, 17, 22.)

B. Procedural Background

On October 23, 2013, Plaintiff filed his original Complaint. (Dkt. No. 2.)[1] In a December 17, 2013 Order, then-Chief Judge Loretta A. Preska dismissed the Complaint for failure to state a claim and granted Plaintiff leave to amend his Complaint to correct the deficiencies identified in the Order. (Order To Amend ("Judge Preska Order") (Dkt. No. 6).)[2] Plaintiff failed to timely amend and Judge Preska dismissed the Complaint on July 14, 2014. (Dkt. No. 14.) Plaintiff thereafter filed letters requesting additional time to file an amended complaint, which Judge Preska granted. (Dkt. Nos. 16–18.) Plaintiff filed a First Amended Complaint on March 11, 2015. (Dkt. No. 20.)[3] Following identification of certain John Does, Plaintiff filed a Second Amended Complaint on February 29, 2016. (Dkt. No. 50.) On June 20,

---

[1] The original Complaint named as Defendants: Commissioner of the Department of Corrections Brian Fischer, Defendant Lee, and John and Jane Doe Commissioners of the Department of Mental Health. (Dkt. No. 2.)

[2] Plaintiff's case was initially assigned to then-Chief Judge Preska. On March 18, 2015, Plaintiff's case was reassigned to this Court. (*See* Dkt. (minute entry for Mar. 18, 2015).)

[3] The Amended Complaint named as Defendants: Lee, Franco, Taliaferro, Bianco, and a John Doe STP/SHU Sergeant. (Dkt. No. 20.)

2016, Defendants moved to dismiss the Second Amended Complaint, (Dkt. Nos. 57–58), and

Plaintiff did not file a response.  On January 30, 2017, the Court filed an Opinion & Order

("Opinion") concluding that Plaintiff failed to state a claim and, accordingly, granting

Defendants' motion in its entirety.  (Opinion 18 (Dkt. No. 70).)  The Court, although noting that

"Plaintiff has already amended his Complaint twice, and did so once in response to Judge

Preska's decision on the merits of his claims," nevertheless dismissed the Second Amended

Complaint without prejudice and granted Plaintiff 30 days to amend.  (*Id.*)

Plaintiff failed to timely amend.  Accordingly, on May 24, 2017, the Court issued an

Order dismissing the case without prejudice.  (Dkt. No. 74.)  On July 27, 2017, Plaintiff filed a

letter stating that prison officials had not promptly delivered his legal mail to him.  (Dkt. No. 76.)

The Court reopened the case and granted Plaintiff 45 days to amend.  (Dkt. No. 77.)  Plaintiff did

not timely amend, but the Court granted Plaintiff repeated extensions.  (Dkt. Nos. 81, 83, 95, 97.)

On March 29, 2018, Plaintiff filed the instant Third Amended Complaint.  (*See* TAC

(Dkt. No. 99).)  The Third Amended Complaint — in addition to naming as Defendants Lee,

Franco, Wahlquist, Taliaferro, and Bacino, all of whom had previously been named and served

— named Cousins and Suprenant for the first time.  (*Id.* at 1–2.)  On May 11, 2018, Defendants

(save Cousins and Suprenant, who had not yet been served) filed a letter seeking a pre-motion

conference in anticipation of moving to dismiss.  (Dkt. No. 106.)  On May 21, 2018, the Court

set a briefing schedule.  (Dkt. No. 109.)  On June 29, 2018, Defendants (save Cousins and

Suprenant) filed the instant Motion To Dismiss and accompanying papers.  (Not. of Mot. (Dkt.

No. 117); Mem. of Law in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 118).)  On July 3, 2018, the

Court issued an Order directing service on Cousins and Suprenant, (Dkt. No. 120), who were

thereafter served, (Dkt. Nos. 138, 139).  On October 19, 2018, Cousins and Suprenant joined in

Defendants' in-progress Motion, raising the same arguments. (Not. of Mot. (Dkt. No. 151);

Mem. of Law in Supp. of Mot. (Dkt. No. 150).) On December 7, 2018, Plaintiff filed a letter

stating that he "found a defect in [his] Third Amended Complaint" — namely, he "only

mentioned Defendants['] names in the caption" — and requesting relief. (Letter from Daniel

Clay to Court ("Pl.'s Letter") (Dkt. No. 154).) The Court denied the request on grounds that

"Plaintiff has had four bites at the apple and briefing on the Motion To Dismiss . . . has

finished." (Dkt. No. 156.) On December 14, 2018, Defendants (including Cousins and

Suprenant) filed a reply. (Reply Mem. of Law in Supp. of Mot. ("Defs.' Reply") (Dkt. No.

155).)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(citations, quotation marks, and alterations omitted). Indeed, Rule 8 of the Federal Rules of Civil

Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked

assertions devoid of further factual enhancement." *Id.* (quotation marks and alteration omitted).

Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the

speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated

adequately, it may be supported by showing any set of facts consistent with the allegations in the

complaint," *id.* at 563, and a plaintiff need allege "only enough facts to state a claim to relief that

is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering a motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency of a complaint we accept as true all factual allegations . . . ." (quotation marks omitted)). Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Where, as here, a plaintiff proceeds pro se, the "complaint[] must be construed liberally and interpreted to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted).  However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601,

605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted)).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks and citation omitted). When a plaintiff proceeds pro se, however, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), including, as relevant here, "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted).

B. Analysis

1. Personal Involvement

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) (citations omitted). To establish personal involvement, a plaintiff must show that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* at 139 (citation, italics, and quotation marks omitted). In other words, "[b]ecause vicarious

liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.  Therefore, Plaintiff must plausibly allege that Defendants' actions fall into one of the five categories identified above.  *See Lebron v. Mrzyglod*, No. 14-CV-10290, 2017 WL 365493, at *4 (S.D.N.Y. Jan. 24, 2017) (holding that the five categories "still control[] with respect to claims that do not require a showing of discriminatory intent" post-*Iqbal*).

Here, as Defendants argue, (Defs.' Mem. 11–12), and as Plaintiff acknowledges, (*see* Pl.'s Letter), Plaintiff fails to name or identify any individual Defendant in the body of the Third Amended Complaint.  Although Plaintiff alleges that "[D]efendants knew about" and "had full knowledge" of the alleged conditions because Plaintiff "told . . . [D]efendants when they made rounds in the STP," (TAC ¶¶ 13–14), that general allegation is insufficient.  Plaintiff does not connect any *individual* Defendant, "through [the Defendant's] own individual actions," to any alleged violation.  *Iqbal*, 556 U.S. at 676.  Plaintiff thus fails to allege the personal involvement of any Defendant.  *See Quick v. Westchester County*, No. 18-CV-243, 2019 WL 1083784, at *3 (S.D.N.Y. Mar. 7, 2019) (holding personal involvement not established where, "although [the defendant's] name and title . . . appear in the caption of the Amended Complaint, [the] [p]laintiff fails to name or identify [the defendant] anywhere in the body of the Amended Complaint or otherwise connect him to the allegations raised therein"); *King v. Falco*, No. 16-CV-6315, 2018 WL 6510809, at *7 (S.D.N.Y. Dec. 11, 2018) (holding personal involvement not established where the "plaintiff includes [the defendant's] name in the case caption but fails to make any substantive allegations against her in the body of the complaint"); *Tracey v. City of Geneva*, No. 17-CV-6567, 2018 WL 1509355, at *3 (W.D.N.Y. Mar. 26, 2018) ("A complaint that lumps all the defendants together . . . and provides no factual basis to distinguish their conduct fails to

satisfy [Rule 8]." (citations, quotation marks, and alterations omitted)); *Leneau v. Ponte*, No. 16-CV-776, 2018 WL 566456, at \*15 (S.D.N.Y. Jan. 25, 2018) ("[C]omplaints that rely on group pleading and fail to differentiate as to which defendant was involved in the alleged unlawful conduct are insufficient to state a claim." (citations and quotation marks omitted)).  Accordingly, Plaintiff's constitutional claims must be dismissed in their entirety.  *See Davis v. Cheverko*, No. 16-CV-4034, 2017 WL 6397749, at \*4 (S.D.N.Y. Dec. 13, 2017) ("[The defendant's] name and position . . . appear nowhere in the Amended Complaint, other than in the caption.  This alone is grounds to dismiss the claims against [the defendant]." (citations omitted)); *Perkins v. City of New York*, No. 14-CV-3779, 2017 WL 1025987, at \*2 (S.D.N.Y. Mar. 15, 2017) ("Where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted." (citations and alterations omitted)).

2.  Eighth Amendment

Defendants argue that Plaintiff — who alleges that, during his 67 days in the STP, he experienced "excessive heat," the "deprivation of clean water," and a "cockroach infestation," (TAC ¶ 2) — has failed to correct the deficiencies previously identified by the Court and thus fails to state an Eighth Amendment claim.  (Defs.' Mem. 6–10.)  The Court agrees.

The Eighth Amendment's prohibition on the imposition of "cruel and unusual punishments," U.S. Const. amend. VIII, "sets constitutional boundaries on the conditions of imprisonment," *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997).  "Although the Constitution does not require comfortable prison conditions, the conditions of confinement may not involve the wanton and unnecessary infliction of pain." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, 349 (1981); *see also Seymore v.*

*Dep't of Corr. Servs.*, No. 11-CV-2254, 2014 WL 641428, at *3 (S.D.N.Y. Feb. 18, 2014)

("[T]he Second Circuit . . . has explained that because society does not expect or intend prison

conditions to be comfortable, only extreme deprivations are sufficient to sustain a conditions-of-

confinement claim." (alteration and quotation marks omitted) (quoting *Blyden v. Mancusi*, 186

F.3d 252, 263 (2d Cir. 1999))). To state a cognizable Eighth Amendment challenge to

conditions of confinement, a plaintiff must plead both an objective element and a mental-state

element. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective element requires a

plaintiff demonstrate the existence of conditions that are "sufficiently serious," such that he was

denied "the minimal civilized measure of life's necessities," *id.* (citation omitted), that is,

conditions that "either alone or in combination[] pose an unreasonable risk of serious damage to

[the plaintiff's] health," *Walker*, 717 F.3d at 125. "[T]here is no static test to determine whether

a deprivation is sufficiently serious; the conditions themselves must be evaluated in light of

contemporary standards of decency." *Id*. (citation omitted). The mental-state element requires a

plaintiff demonstrate that the defendant acted with "deliberate indifference." *Farmer*, 511 U.S.

at 835. "Deliberate indifference is a mental state equivalent to subjective recklessness, as the

term is used in criminal law." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) (citing

*Farmer*, 511 U.S. at 839–40). A defendant "cannot be found liable under the Eighth

Amendment for denying an inmate humane conditions of confinement unless the official knows

of and disregards an excessive risk to inmate health or safety; the official must be both aware of

facts from which the inference could be drawn that a substantial risk of serious harm exists, and

he must also draw the inference." *Farmer*, 511 U.S. at 837. "A prison official may be found to

have had a sufficiently culpable state of mind if he participated directly in the alleged event, or

learned of the inmate's complaint and failed to remedy it, or created or permitted a policy that

harmed the inmate, or acted with gross negligence in managing subordinates." *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001). The plaintiff must, in other words, allege "more than mere negligence." *Farmer*, 511 U.S. at 835.

### a. Objective Element

As an initial matter, the Third Amended Complaint alleges that there were "giant" cockroaches in the STP which "terrorized" Plaintiff — who "has an *extreme* disgust for cockroaches" and "a history of mental health issues" — when they "crawled all over his cell." (TAC ¶¶ 18–19.) This allegation is indistinguishable from the claims raised in the Second Amended Complaint and previously rejected by the Court. (*See* Opinion 7–8.) "The mere presence of vermin in a detainee's housing area does not constitute a denial of 'the minimal civilized measure of life's necessities.'" *Benjamin v. Fraser*, 161 F. Supp. 2d 151, 174 (S.D.N.Y. 2001) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)), *aff'd in part, vacated in part*, 343 F.3d 35, 57 (2d Cir. 2003)). Plaintiff fails, as he did previously, to describe how the presence of cockroaches harmed him or presented a danger to his well-being sufficient to satisfy the Eighth Amendment's objective element inquiry. Plaintiff's conclusory allegation that he "has an *extreme* disgust" for cockroaches, that the cockroaches "terrorized" him as they "crawled all over his cell," and vague alluding to his "history" of unspecified "mental health issues," (TAC ¶¶ 18–19), do not raise allegations that are "of constitutional dimension." *Brody v. Koehler*, No. 87-CV-1093, 1988 WL 78371, at *2 (S.D.N.Y. July 15, 1988) (citation omitted); *see also Aragon v. New York*, No. 14-CV-9797, 2017 WL 2703562, at *4 (S.D.N.Y. June 22, 2017) ("[C]ourts have recognized that contemporary standards of decency currently allow for some amount of exposure to vermin . . . in prison settings." (citations omitted)); *Phillips v. LaValley*, No. 12-CV-609, 2014 WL 1202693, at *12 (N.D.N.Y. Mar. 24, 2014) (finding that a

11

food tray "contaminated" with a cockroach poses a condition "insufficiently serious to sustain an Eighth Amendment conditions of confinement claim"); *Wang v. Vahldieck*, No. 09-CV-3783, 2012 WL 119591, at *9 (E.D.N.Y. Jan. 9, 2012) (holding that exposure for under seven hours to a "dirty cell containing urine, cockroaches and used bathroom tissue . . . does not rise to the sort of conduct held 'repugnant to the conscience of mankind'" (citation and quotation marks omitted)); *Govan v. Campbell*, 289 F. Supp. 2d 289, 296–97 (N.D.N.Y. 2003) (finding allegations that the prison had "cockroach problems" were insufficient to state an Eighth Amendment claim); *Hill v. Smith*, No. 05-CV-1724, 2005 WL2666597, at *7 (M.D. Pa. Oct. 19, 2005) (holding that the presence of mice and cockroaches in plaintiff's cell, although "uncomfortable," did not rise to the level of an Eighth Amendment violation); *Oliver v. Powell*, 250 F. Supp. 2d 593, 605 (E.D. Va. 2002) (granting summary judgment where allegations of a cell with cockroaches, leaky toilets, and peeling paint did "not rise to the level of an Eighth Amendment claim"); *cf. Sain v. Wood*, 512 F.3d 886, 888 (7th Cir. 2008) ("We have held that a prolonged pest infestation, specifically a significant infestation of cockroaches and mice, may be considered a deprivation sufficient to constitute a due process violation." (citation omitted)). Nor does Plaintiff allege that he was "actually harmed" by the cockroaches. *Govan*, 289 F. Supp. 2d at 296–97. Accordingly, Plaintiff's Eighth Amendment claim based on the presence of cockroaches is dismissed. *See id.*

Second, Plaintiff alleges that, during his time in the STP, "there was a heatwave where the temperature reached 102 degrees," that "there was no ventilation," and that "[i]t was like being locked in a car on a hot [s]ummer day." (TAC ¶¶ 3–5.) As a result, Plaintiff "sweat profusely day and night," (*id*. ¶ 6), causing him "pain, dehydration, thirst, and put [him] at risk for a heat stroke," (*id.* ¶ 11). Courts have consistently held that exposure to extreme

temperatures may, at least where the exposure is prolonged and causes injury, violate the Eighth

Amendment. *See Gaston*, 249 F.3d at 165 (finding exposure to freezing temperatures for a

period of five months can constitute an Eighth Amendment violation); *Corselli v. Coughlin*, 842

F.2d 23, 27 (2d Cir. 1988) (noting exposure to "bitter cold" and subfreezing temperatures for

three months may constitute cruel and unusual punishment); *Wingate v. Robert N. Davoren*

*Center*, No. 12-CV-5521, 2013 WL 4856573, at *3–4 (S.D.N.Y. Sept. 10, 2013) (holding that

the "[p]laintiff's allegations that the conditions of confinement objectively posed a sufficiently

serious health risk" where the complaint alleged that his exposure to 90-degree temperatures for

a week caused him to "endure fainting spells, dizzy spells, and trouble breathing"); *Sleeper v.*

*City of Richmond*, No. 12-CV-441, 2012 WL 3555412, at *7 (E.D. Va. Aug. 16, 2012) (finding

excessive heat, which caused the death of the prisoner, sufficiently stated Eighth Amendment

violation); *Clark v. Bandy*, No. 10-CV-169, 2011 WL 1346975, at *3 (N.D. Ga. Apr. 8, 2011)

(holding prisoner stated an Eighth Amendment claim where he complained to prison officials of

excessive heat and trouble breathing for three months). As these cases show, to be actionable, a

"claim based on exposure must be premised on a threat to health and safety that existed for a

prolonged period." *Stevens v. City of New York*, No. 10-CV-5455, 2011 WL 3251501, at *3–4

(S.D.N.Y. July 22, 2011) (citing *Trammell v. Keane*, 338 F.3d 155, 165 (2d Cir. 2003)). Where

the exposure is for a short period of time, courts have found no Eighth Amendment violation.

*See id.* (holding pretrial detainee housed in a cell with a broken window covered by a garbage

bag during cold and rainy weather for as many as four days did not allege a constitutional

violation); *Borges v. McGinnis*, No. 03-CV-6375, 2007 WL 1232227, at *6 (W.D.N.Y. Apr. 26,

2007) (finding inmate, wearing a paper gown and slippers, with no blanket, residing in a cell that

was approximately 50 degrees for three days did not suffer a constitutional deprivation); *Scot v.*

*Merola*, 555 F. Supp. 230, 231–34 (S.D.N.Y. 1983) (dismissing conditions-of-confinement claim where inmate's "housing area had no heat," the "temperature dropped below 50 degrees," and the windows were broken).

Here, Plaintiff fails, as he did previously, (*see* Opinion 8–10), to allege sufficient facts showing that the alleged excessive heat "pose[d] an unreasonable *risk* of serious damage to [Plaintiff's] health." *Walker*, 717 F.3d at 125 (emphasis added). Plaintiff alleges dehydration caused by profuse sweating, (TAC ¶¶ 6, 10), made worse by the brown water coming out of Plaintiff's sink, (*id.* ¶ 15), as well as discomfort caused by "never [getting] a *cold* cup of water," (*id.* ¶ 10). Yet, Plaintiff also alleges that he was given water three times a day, at each meal. (*Id.* ¶¶ 7–9.) Nor does Plaintiff allege that he suffered any actual harm to his health caused by the alleged dehydration. *Cf. Wingate*, 2013 WL 4586573, at *3–4 (holding objective element satisfied where the plaintiff suffered "fainting spells, dizzy spells, and trouble breathing" caused by continuous exposure to temperatures above 90 degrees). Accordingly, the alleged excessive heat does not rise to the level of a constitutional violation.

Finally, Plaintiff alleges that, throughout his time in the STP, there was "brown, contaminated water coming out of the sink." (TAC ¶¶ 15–16.) The Supreme Court has held the Eighth Amendment forbids "demonstrably unsafe drinking water," despite the fact that the harm from drinking it might be a future one. *Helling v. McKinney*, 509 U.S. 25, 33 (1993). However, here, as previously, (*see* Opinion 10–11), Plaintiff does not plead sufficient facts to allege a constitutional violation. Even assuming the water coming from the sink was brown (and thus contaminated) for the entirety of his 67-day stay in the STP, Plaintiff alleges that he was given an alternative source of clean water during every meal. (TAC ¶¶ 7–9.) Absent allegations suggesting that Plaintiff was deprived of potable drinking water such that he suffered an

unreasonable risk of serious damage to his health, *see Walker*, 717 F.3d at 125, Plaintiff's claims

do not constitute an Eighth Amendment violation.  *See Lunney v. Brureton*, No. 04-CV-2438,

2007 WL 1544629, at *15 (S.D.N.Y. May 29, 2007) ("Even if [the inmate's] cell sink lacked

running water for five days, . . . he does not show an Eighth Amendment violation given that

there is no evidence that he was deprived of water entirely during this period."); *James v.*

*Monroe County Jail*, No. 04-CV-524, 2005 WL 2030730, at *3 (W.D.N.Y. Aug. 23, 2005)

(dismissing Eighth Amendment claim where the "plaintiffs allege[d] only that they lacked access

to running water from their cell sinks for several hours during the night"; there was "no

allegation that they lacked all access to water during the night, or that they lacked access to water

at any time during the day," that the "defendants deliberately deprived them of water," or that

"they suffered any harm other than inconvenience"); *Johnson v. Comm'r of Corr. Servs.*, 699 F.

Supp. 1071, 1074 (S.D.N.Y. 1988) (holding no Eighth Amendment violation where the inmate's

cell sink was inoperable for one week because he was provided drinks with meals).

### b.  Mental-State Element

Even assuming that Plaintiff has alleged one or more objectively serious deprivations,

which he has not, he fails to sufficiently plead that any Defendant acted with deliberate

indifference to his health or safety.  Because Plaintiff fails to identify by name or title any

Defendant in the substantive allegations raised in the Third Amended Complaint, *see supra*

Section II.B.1, Plaintiff cannot show that any particular Defendant acted with any mental state,

let alone the "subjective recklessness" required to state deliberate indifference.  *Salahuddin*, 467

F.3d at 280.  Further, Plaintiff's threadbare allegation that Defendants "knew" about the heat,

brown sink water, and cockroaches because Plaintiff "told" them "when they made rounds in the

STP," and that Defendants "did nothing about" the conditions, (TAC ¶¶ 13–14, 17, 22), is

insufficient.  Plaintiff does not plausibly allege which Defendant "acted with a sufficiently

culpable state of mind because . . . [P]laintiff has, at most, alleged that various defendants were

*negligent* in failing to correct conditions, not that any defendant obdurately and wantonly refused

to remedy a specific risk to . . . [P]laintiff."  *Seymore*, 2014 WL 641428, at *4 (emphasis added).

Because "more than mere negligence" is required to support a claim, *Farmer*, 511 U.S. at 835,

Plaintiff fails to satisfy the subjective element.  *See LaBounty v. Coughlin*, 137 F.3d 68, 72–73

(2d Cir. 1998) ("To succeed in showing deliberate indifference, [a plaintiff] must show that the

acts of defendants involved more than lack of due care, but rather involved obduracy and

wantonness in placing his health in danger.").

Accordingly, Plaintiff has failed to state either element required to state an Eighth

Amendment claim.[4]

### 3.  ADA and Rehabilitation Act Claims

Defendants argue that Plaintiff fails to state a claim under either the ADA or the

Rehabilitation Act.  (Defs.' Mem. 13–16.)  The Court agrees.

Plaintiff sues Defendants in their personal and official capacities.  (*See* TAC 2.)  As an

initial matter, "[i]t is well settled that individuals in their personal capacities are not proper

[d]efendants on claims brought under the ADA or the Rehabilitation Act."  *Holly v.

Cunningham*, No. 15-CV-284, 2016 WL 8711593, at *4 (S.D.N.Y. June 17, 2016) (collecting

cases).  As to the official capacity claims, it is "unsettled" in this Circuit whether individuals may

be sued in their official capacities under the ADA or the Rehabilitation Act.  *Davis v. Collado*,

No. 16-CV-7139, 2018 WL 4757966, at *7 (S.D.N.Y. Sept. 30, 2018).  Although some cases

---

[4] Because the Court concludes that Plaintiff fails to plausibly allege any violation of his constitutional rights, it need not consider Defendants' argument that they are entitled to qualified immunity.  (Defs.' Mem. 16–17.)

hold that individuals may not be held liable at all under either statute, others have concluded that, "because the government is the real party in interest in an official capacity suit," individuals sued in their official capacity may be held liable under the ADA and the Rehabilitation Act. *Id.* (collecting cases for each proposition). This Court, however, need not decide the question, for it is plain that, even assuming official capacity suits are permissible, the Eleventh Amendment bars this claim. The Second Circuit has held that an ADA claim for damages against a state official is not barred by the Eleventh Amendment only "if the plaintiff can establish that the [ADA] violation was motivated by either discriminatory animus or ill will due to disability." *Garcia v. S.U.N.Y. Health Sci. Ctr. of Brooklyn*, 280 F.3d 98, 112 (2d Cir. 2001). The same standard applies for claims brought under the Rehabilitation Act. *See Johnson v. Goord*, No. 01-CV-9587, 2004 WL 2199500, at *19 (S.D.N.Y. Sept. 29, 2004) (dismissing official capacity claims under the ADA and the Rehabilitation Act "because those laws do not provide for money damages against . . . state officials in their official capacities, absent a showing that any violation was motivated by discriminatory animus or ill will due to the disability" (citing *Garcia*)).

Here, the only possible disability alleged is Plaintiff's "history of mental health issues." (TAC ¶¶ 19–20.) As to Defendants' mental state, Plaintiff alleges that, "[o]n some of the hottest days . . . [D]efendants would shut down the [STP] to cool themselves under air conditioners while [Plaintiff] suffered under the intense heat" and that "[D]efendants knew about these conditions" — the heat, brown water, and cockroaches — because Plaintiff "told [them] . . . when they made rounds in the STP," yet "did nothing about them." (*Id.* ¶¶ 12–14, 17, 22.) These conclusory allegations fail to allege that Defendants acted with "discriminatory animus or ill will" at all, let alone "due to" Plaintiff's alleged "mental health issues." *See Holly*, 2016 WL 8711593, at *5 (holding that the inmate failed to allege that the defendants "acted with

discriminatory animus or ill will based on [the] [p]laintiff's visual impairment"); *Chambers v. Wright*, No. 05-CV-9915, 2007 WL 4462181, at *4 (S.D.N.Y. Dec. 19, 2007) (dismissing ADA and Rehabilitation Act claims where the "[p]laintiff d[id] not make any allegations concerning [the] [d]efendants' discriminatory animus or ill will"); *Renelique v. Goord*, No. 03-CV-525, 2006 WL 2265399, at *11 (N.D.N.Y. Aug. 7, 2006) (dismissing ADA official capacity claim where the plaintiff did "not allege[] any facts that would support a conclusion that [the] [d]efendants acted with discriminatory animus or ill will toward him"); *Johnson*, 2004 WL 2199500, at *19 (granting summary judgment on ADA and Rehabilitation Act claims where "[t]he record . . . is devoid of evidence sufficient to create a triable issue of fact as to [the] defendants' discriminatory animus or ill will due to any disability"). Accordingly, Defendants are entitled to Eleventh Amendment immunity on Plaintiff's ADA and Rehabilitation Act claims. *Garcia*, 280 F.3d at 112.

    C. Leave to Replead

    Defendants argue that Plaintiff's Third Amended Complaint should be dismissed with prejudice. (Defs.' Reply 1–2.) The Court agrees. A complaint should be dismissed *without* prejudice if the pleading, "liberally read, suggests that the plaintiff has a claim that []he has inadequately or inartfully pleaded and that []he should therefore be given a chance to reframe." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation, quotation marks, and alterations omitted)). If a complaint, however, has substantive problems and "[a] better pleading will not cure [them]," leave to "replead should be denied." *Id.* (citing *Hunt v. All. N Am. Gov't Income Tr.*, 159 F.3d 723, 728 (2d Cir. 1998)). Even pro se plaintiffs are not entitled to file an amended complaint if the complaint "contains substantive problems such that an amended pleading would be futile." *Lastra v. Barnes & Noble Bookstore*, No. 11-CV-2173, 2012 WL 12876, at *9

18

(S.D.N.Y. Jan. 3, 2012), *aff'd*, 523 F. App'x 32 (2d Cir. 2013). With this Opinion, the Court has considered and dismissed Plaintiff's claims on the merits three times. (*See* Opinion; Judge Preska Order.) Plaintiff has had multiple opportunities to correct the deficiencies identified by the Court and to properly plead his claims. The Court thus concludes that further amendment would be futile.

## III. Conclusion

In light of the foregoing analysis, the Court grants Defendants' Motion. Plaintiff's Third Amended Complaint is dismissed with prejudice. The Clerk of Court is respectfully requested to terminate the pending Motions, (Dkt. No. 117, 151), to mail a copy of this Opinion & Order to Plaintiff, and to close this case.

SO ORDERED.

Dated:  March **19**, 2019
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE